IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RICHARD KIM D/B/A CENTRE CLEANERS, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | Civil Action No. 3:21-CV-0345-D |
| NATIONWIDE MUTUAL INSURANCE COMPANY, | § | |
| | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In this removed action arising from an insurance coverage dispute over wind and hail damage to a roof, plaintiff Richard Kim d/b/a Centre Cleaners ("Kim") sues defendant Nationwide Mutual Insurance Company ("Nationwide") to recover on contractual and extracontractual theories arising from Nationwide's denial of his claim. Nationwide moves for summary judgment and, in the alternative, for judgment on the pleadings. Nationwide also moves to strike the opinion and testimony of Kim's retained testifying expert Fred Lupfer ("Lupfer"). For the reasons explained, the court grants in part and denies in part the motion to strike Kim's expert's opinion and testimony, denies without prejudice Nationwide's summary judgment motion as to Kim's breach of contract claim, grants Nationwide's motion for judgment on the pleadings as to Kim's breach of contract claim, and grants Nationwide's summary judgment motion as to all of Kim's extracontractual claims. The court also grants Kim leave to amend.

I

Nationwide insured Kim's commercial property located in Irving, Texas (the "Property") under policy number ACP BPRM 5575805481 (the "Policy").[1]  The Policy covered wind and hail damage, but did not cover damage from wear and tear or negligent work.  The Policy was effective from January 7, 2020 to January 7, 2021.

After a storm on April 19, 2020, Kim made a claim under the Policy for hail damage. Nationwide responded on May 13 and scheduled an inspection of the Property with an independent adjuster, Ryan Watkins ("Watkins").  Watkins inspected the Property and concluded that there was only light hail damage to the air condition unit, gutters, and light fixtures.  Relying on Watkins' report, Nationwide informed Kim that the hail damage was covered but the damage was minimal and only valued at $1,135.73, which was less than Kim's deductible for wind and hail damage.  Because the damage did not exceed Kim's deductible, Nationwide would pay Kim nothing.

On June 9 Kim sent a demand letter to Nationwide, seeking $344,896.23 for damages he claimed were caused by the April 19 hail storm.  On June 10 Nationwide responded with a formal partial denial letter, denying most of his claimed sum and issuing no payment (because, in its view, the hail damage did not exceed the deductible).  Nationwide also scheduled another inspection of the Property: this time with Daniel Treppel ("Treppel"), an

---

[1]According to the record, the business and the property are owned by Kim's father, Chang Kim.  The lawsuit, however, was filed by "Richard Kim d/b/a Centre Cleaners," suggesting that Kim, not his father, is the owner.  Regardless who owns the Property or business, the Policy was issued to Kim, and he is suing under that policy.

engineer.  Treppel completed the inspection and concluded that other factors—including improper installation, age-related deterioration, and water damage—contributed to the damage.  In September 2020 Nationwide deposed Kim, and in November 2020 it sent a second partial denial letter to Kim.

Kim then filed this suit against Nationwide in state court, asserting the following claims: breach of contract; violations of the Texas Insurance Code, Tex. Ins. Code Ann. §§ 541-542 (West 2009 & Supp. 2020); violations of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code Ann. §§ 17.41-17.63 (West 2021); and breach of the common law duty of good faith and fair dealing.

Kim hired his own expert—Lupfer—who inspected the exterior of the Property for damage in August 2021 and determined that the damage from hail totaled $135,827.03. Lupfer's report stated that this amount was "the reasonable cost of repair for the damages [from the] hail/wind loss event that occurred on or about April 19, 2020."

Nationwide removed the case to this court based on diversity of citizenship.  It now moves for summary judgment and, in the alternative, for judgment on the pleadings, and to strike Lupfer's opinion and testimony.  Kim opposes the motions, which the court now decides on the briefs, without oral argument.

II

A

Nationwide moves for summary judgment on claims for which Kim will bear the burden of proof at trial.

- 3 -

When a party moves for summary judgment on claims that the opposing party will bear the burden of proof at trial, the moving party can obtain summary judgment by pointing the court to the absence of evidence on any essential element of the nonmovant's claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant does so, the opposing party must go beyond his pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The opposing party's failure to produce proof as to any essential element of a claim renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076.

## B

Fed. R. Civ. P. 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."[2] The standard for deciding a motion under Rule 12(c) is the same as the one for deciding a motion to dismiss under Rule 12(b)(6). *See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313

---

[2]Although Nationwide filed its motion under Rule 12(c) nearly one year after filing its answer, it filed the motion before the scheduling order's applicable deadline for filing motions. Accordingly, the Rule 12(c) motion is timely. *Cf. Argo v. Woods*, 399 Fed. Appx. 1, 3 (5th Cir. 2010) (per curiam) ("[A] judge has discretion to deny Rule 12(c) motion filed after excessive delay." (citation omitted)).

F.3d 305, 313 n.8 (5th Cir. 2002) ("A number of courts have held that the standard to be applied in a Rule 12(c) motion is identical to that used in a Rule 12(b)(6) motion." (citation omitted) (internal quotation marks omitted)).

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [plaintiff's] complaint by 'accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind*., 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (second alteration in original) (internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig*., 495 F.3d 191, 205 (5th Cir. 2007)).  To survive a motions to dismiss, Kim must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 678 (citation omitted).

III

The court turns first to Nationwide's motion to strike Lupfer's opinion and testimony,[3] which is based on the contention that Lupfer's opinion testimony[4] fails to comply with Rule 26(a)(2)(B)(ii).[5]

A

Under Rule 26(a)(2)(B)(i) and (ii),[6] the disclosures of an expert witnesses who is retained or specially employed to provide expert testimony in the case or whose duties as the party's employee regularly involve giving expert testimony must be accompanied by a written report that contains "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming them." The Advisory Committee's Note to Rule 26 provides that expert witnesses "must prepare a detailed and complete written report, stating the testimony the witness is expected

---

[3]Nationwide moves under Rules 26 and 37 and Fed. R. Evid. 702 to strike Lupfer's testimony. Nationwide is seeking to preclude testimony that Lupfer will offer at trial, not strike Lupfer's designation as an expert. *See Norris v. United States*, 2012 WL 1231804, at *2 n.3 (N.D. Tex. Apr. 12, 2012) (Fitzwater, C.J.) (distinguishing the two forms of relief).

[4]This argument appears to challenge Lupfer's *causation* opinion testimony and his *cost* opinion testimony.

[5]Nationwide's motion to strike mentions Rule 26(a)(2)(B)(i), which requires that the expert report contain a complete statement of all opinions that the witness will express and his basis for them. But in its motion, Nationwide only challenges Lupfer's failure to disclose the facts and data he considered in reaching his opinions. Accordingly, the court reviews Nationwide's challenge under Rule 26(a)(2)(B)(ii).

[6]Nationwide also mentions Rule 26(e) in reply, but it does so in passing, without explaining its relevance. The court therefore does not consider this rule.

- 6 -

to present during direct examination, together with the reasons therefor." Rule 26 advisory committee's note (1993 amendments). "These Notes also explain that the purpose of the reports is to avoid the disclosure of 'sketchy and vague' expert information, as was the practice under the former rule." *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996) (citing Rule 26 advisory committee's note (1993 amendments)). "The purpose of a 'detailed and complete' expert report as contemplated by Rule 26(a) . . . [is to] prevent an ambush at trial." *In re Enron Corp. Secs., Derivative & "ERISA" Litig.*, 2007 WL 5023541, at *1 (S.D. Tex. Feb. 1, 2007) (quoting *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiena de P.R.*, 248 F.3d 29, 35 (1st Cir. 2001)) (some internal quotation marks omitted). "The test of a report is whether it was sufficiently complete, detailed and in compliance with the Rules so that surprise is eliminated, unnecessary depositions are avoided, and costs are reduced." *Reed v. Binder*, 165 F.R.D. 424, 429 (D.N.J. 1996) (cited in *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 n.6 (7th Cir. 1998)).

## B

Nationwide maintains that Kim has failed to disclose the key information that Lupfer relied on in forming his opinions because his report states that he did not know what materials he reviewed prior to inspecting the Property and did not identify what he reviewed. Kim responds that in Lupfer's deposition he said  that he "did not think" he reviewed anything before making his report, and that Lupfer specified in his deposition testimony all of the evidence on which he relied.

C

Lupfer's report does not comply Rule 26(a)(2)(B)(ii).[7] There are multiple deficiencies in his report.  For example, Lupfer states that estimates "may or may not have been" reviewed prior to his inspection.  This plainly violates Rule 26(a)(2)(B)(ii), which requires that Lupfer disclose "the facts or data considered" in forming his opinions.  Furthermore, in his deposition, Lupfer testified that he reviewed sources (i.e., a hail storm map) that were not disclosed in the report.  He also testified that, although his report stated that he reviewed the interior of the building, he did not actually do so.  *Compare* ECF No. 26 at 309 (stating that Lupfer reviewed the interior finishes), *with id.*, at 401 ("Q: So you didn't evaluate the interior in this case? A: I did not.").

D

Having concluded that Kim did not comply with Rule  26(a)(2)(B)(ii) the court now determines in its discretion whether to quash (i.e., to exclude) Lupfer's report and opinions or to impose some lesser sanction.  *See, e.g.*, *Sullivan v. Glock, Inc.*, 175 F.R.D. 497, 505-06 (D. Md. 1997) (Grimm, J.) (surveying cases and concluding that "[t]he net result of the analysis of these cases is that the trial court has enormous discretion in deciding whether a party's violation of the expert report rules is justified or harmless, and the result will be

---

[7]Rule 26(a)(2)(B) includes other requirements, such as that the expert report must contain a statement of the compensation the expert is receiving for his testimony.  Rule 26(a)(2)(B)(vi).  Nationwide does not challenge Kim's compliance with other parts of the Rule, so the court does not address them.  *See Norris*, 2012 WL 1231804, at *2 n.2 ("Because plaintiffs do not argue that Dr. Coburn's report fails to comply with these requirements, the court need not address them.").

determined by the facts peculiar to each case").  Under the circumstances here—which do not involve willful disobedience of a court order or a complete failure to comply with Rule 26(a)(2)(B)—the court concludes that it should impose a sanction less drastic than complete exclusion of Lupfer's expert testimony.  See *Galvez v. KLLM Transp. Servs., LLC*, ___ F.Supp.3d ___, ___, 2021 WL 5964629, at *5-6 (N.D. Tex. Dec. 16, 2021) (Fitzwater, J.) (describing court's discretion).  That lesser sanction is this: within 60 days of the date this memorandum opinion and order is filed, Kim must serve an amended report of Lupfer that fully complies with all requirements of Rule 26(a)(2)(B).  *See, e.g.*, *Klein v. Fed. Ins. Co.*, 2014 WL 6885973, at *3 (N.D. Tex. Dec. 8, 2014) (Fitzwater, J.) (imposing the same requirement).

## IV

Nationwide next moves to strike Lupfer's opinion testimony on the ground that it fails to comply with Fed. R. Evid. 702.

## A

"The court decides th[is] motion[] in its role as gatekeeper under Fed. R. Evid. 702." *Johnson v. BAE Sys. Land & Armaments, L.P.*, 2014 WL 1714487, at *25 (N.D. Tex. Apr. 30, 2014) (Fitzwater, C.J.) (citations omitted).  "The court may admit proffered expert testimony only if the proponent, who bears the burden of proof, demonstrates that (1) the expert is qualified, (2) the evidence is relevant to the suit, and (3) the evidence is reliable." *Nunn v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 2540754, at *2 (N.D. Tex. June 22, 2010) (Fitzwater, C.J.) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)).

The first requirement is that the expert be qualified. "Before a district court may allow a witness to testify as an expert, it must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (quoting Rule 702). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Id.* (citing *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)). "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (citation omitted).

The second requirement is that the expert's testimony be relevant. To be relevant, "expert testimony [must] 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 245 (5th Cir. 2002) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993)). "Relevance depends upon 'whether [the expert's] reasoning or methodology properly can be applied to the facts in issue.'" *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (quoting *Daubert*, 509 U.S. at 593); *see also* Rule 702(d) (requiring that "expert has reliably applied the principles and methods to the facts of the case").

The third requirement is that the expert's testimony be reliable. "Reliability is determined by assessing 'whether the reasoning or methodology underlying the testimony is scientifically valid.'" *Knight*, 482 F.3d at 352 (quoting *Daubert*, 509 U.S. at 592-93); *see*

*also* Rule 702(c) (requiring that "testimony [be] the product of reliable principles and methods"). Expert testimony "must constitute 'more than subjective belief or unsupported speculation.'" *Nunn*, 2010 WL 2540754, at *2 (quoting *Daubert*, 509 U.S. at 590). The court focuses on the expert's methodology, not the conclusions generated by it. *Id.* at *4 (citing *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997)). If, however, "there is simply too great an analytical gap between the [basis for the expert opinion] and the opinion proffered," the court may exclude the testimony as unreliable. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *see also Johnson v. Arkema, Inc.*, 685 F.3d 452, 460-61 (5th Cir. 2012) (per curiam). This review is usually conducted by considering the five nonexclusive Daubert factors. But these factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of [the] testimony." *Kumho*, 526 U.S. at 150.

The burden is on the proponent of the expert testimony to establish its admissibility by a preponderance of the evidence. *See Daubert*, 509 U.S. at 592 n.10; *see also Johnson*, 685 F.3d at 459. The court's inquiry is flexible in that "[t]he relevance and reliability of expert testimony turns upon its nature and the purpose for which its proponent offers it." *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010) (citation omitted). "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the [trier of fact's] consideration." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on

the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596; *Nunn*, 2010 WL 2540754, at *5.

## B

Nationwide appears to challenge Lupfer's testimony on three grounds: first, Lupfer's testimony on causation is not helpful or relevant because Lupfer cannot determine the date of the loss or segregate non-covered losses; second, Lupfer's testimony is based on flawed methodology because he did not outline objective rules or guidelines in analyzing the hail damage, only took nine photos of the hail damage, and relied on a storm map; and, third, his testimony on cost is unreliable because it is based on unsupported speculation and "baseless assumptions."

Kim responds that Lupfer properly segregated the damage from other causes and ruled out other storms;[8] Lupfer used a reliable methodology, which he explained in detail in his deposition; and Lupfer's cost estimate was not based on speculation because Lupfer explained why he itemized certain costs.

## C

Lupfer's opinion testimony on causation is sufficiently relevant and helpful to be

_____

[8]Kim includes an affidavit of Lupfer in his responses to Nationwide's motions. In his affidavit, Lupfer changes one of the answers he gave in his deposition. He explains that he erred in replying "No" as to whether he could determine whether the damage to the roof was caused by other storms, when he meant to answer "Yes."

Nationwide cites case law dealing with the "sham-affidavit" doctrine to contend that this affidavit is not competent summary judgment evidence. The court need not address Nationwide's arguments because it is not relying on this part of Lupfer's affidavit in denying Nationwide's summary judgment motion.

admissible at trial.  Lupfer opined that he thought the hail storm caused damage to Kim's roof.  Although he stated that he could not rule out other storms, this does not change his conclusion: the April 19 storm caused damage to Kim's roof.  This evidence is relevant and helpful because it would "assist the trier of fact to understand or determine a fact in issue"—namely, whether the April 19 storm caused the damage to the roof.  *See Bocanegra v. Vicmar Servs., Inc*., 320 F.3d 581, 584 (5th Cir. 2003).  This is not a circumstance where the court must conclude that "there is simply too great an analytical gap between the [basis for the expert opinion] and the opinion proffered," such that the court may exclude the testimony as irrelevant or unhelpful.[9]  *Gen. Elec. Co.*, 522 U.S. at 146.

Nationwide's arguments to the contrary are misplaced.  Lupfer's inability to rule out other storms or segregate costs do not make his testimony irrelevant or unhelpful; rather, these issues only "relate to the weight and credibility that the jury should assign to [Lupfer's] causation testimony."  *Galvez*, 2021 WL 5964629, at *8; *see also Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).  If Lupfer cannot rule out other storms, this deficiency may diminish the credibility of his determination that the April 19 storm caused the damage, but it does not eliminate the testimony's relevance.  And if Kim cannot provide evidence segregating the damages, this deficiency may result in the dismissal of his breach of contract claim under the concurrent cause doctrine, *see infra* § V(B)(2), but it does not affect the

---

[9]In fact, Lupfer's testimony is not much different from the other experts: all the experts in this case agree that the April 19 hail storm damaged the roof.  The dispute turns on *how much* damage it caused.

relevance of Lupfer's testimony.  Accordingly, the court concludes that Lupfer's testimony is sufficiently relevant and helpful to be admissible at trial.

### D

Lupfer's opinion testimony on causation relied on proper methods.  Lupfer explained his methodology such that the court can conclude that it is sufficiently reliable.  He said that he inspected the Property; observed the markings himself on the Property; was able to distinguish the hail from other potential sources of damages; and reviewed a weather report to determine whether a hail storm could have damaged the roof.  His personal inspection of the Property, his in-depth explanation of his procedures, and his experience employing the same methodology show that he used sufficiently reliable methods.  *See, e.g.*, *Newton v. State Farm Lloyds*, 2022 WL 1217410, at *5 (E.D. Tex. Mar. 31, 2022) ("Hovanec personally inspected of the roof, conducted the appraisal, drafted the report, and determined the award amount; his role as umpire is a reliable basis for his testimony."), *rec. adopted*, 2022 WL 1214260 (E.D. Tex. Apr. 25, 2022); *Kahlig Auto Grp. v. Affiliated FM Ins. Co.*, 2021 WL 148056, at *4 (W.D. Tex. Jan. 15, 2021) ("Phelps reviewed an analysis of published weather data from the date of the storm; physically inspected the three dealerships; interviewed employees with personal knowledge of the storm and damage; [and] reviewed photographs of vehicles located at the three dealerships damaged by hail during the storm."); *Norberto L. v. State Farm Lloyds*, 2020 WL 9934407, at *2-3 (S.D. Tex. Oct. 27, 2020) (finding testimony reliable under Rule 702, and thus admissible, where an expert appraised roof damage, because "[t]he facts and data contained in the report prepared by Allstar Adjusters

USA is certainly the type of information reasonably relied upon by experts in the field of roofing, appraising, and property adjusting"); *Gaffney v. State Farm Fire & Cas. Co.*, 2009 WL 3188421, at *4 (E.D. La. July 15, 2009) (holding that an expert's personal inspection is "enough to make [the expert's] report sufficiently reliable").

　　　Nationwide contends that Lupfer's methods are unreliable because he only relied on a weather website and nine photos of hail damage, which were taken within only five minutes, to reach his conclusions.  In challenging Lupfer's methods, however, Nationwide appears to contest the "bases and sources" of Lupfer's opinion.  But "[o]ther than taking issue with the sources of information relied on by [Lupfer, Nationwide has] not articulated any reason why [it believes Lupfer's] methodology is unreliable."  *State Auto. Mut. Ins. Co. v. Freehold Mgmt., Inc.*, 2019 WL 1436659, at *10 (N.D. Tex. Mar. 31, 2019) (Lindsay, J.); *Kahlig Auto Grp.*, 2021 WL 148056, at *4 ("The discrete issues Defendant has with Phelps's testimony, such as the lack of photographic evidence and the reference to 'asphalt release' can be addressed through cross examination.").[10]  As such, these arguments again "relate to the weight and credibility that the jury should assign to [Lupfer's] causation testimony" because Nationwide focuses on the persuasiveness of the sources of information relied on by Lupfer, not whether his methods were reliable.  *Galvez*, 2021 WL 5964629, at *8. The court therefore rejects Nationwide's challenge to Lupfer's methods as based on a flawed

---

　　　[10]Nationwide avers that Lupfer did not say the marks he saw were caused by hail; he only stated that they were caused by some round object.  This argument appears to be unsupported by the record: Lupfer states multiple times that he thought the marks were caused by hail.

methodology.

E

Finally, the court concludes that Lupfer's cost opinion testimony is sufficiently reliable to be admitted at trial. In reaching his conclusion on cost, Lupfer inspected the Property and explained why he estimated certain prices. For example, he explained that federal law required that there be a skilled, not unskilled, laborer involved in building the roof. He also specified why certain roles, like safety supervisor, had specific duties and how that factored into his estimates. *See Pogo Res., LLC v. St. Paul Fire & Marine Ins. Co.*, 2021 WL 1171884, at *5 (N.D. Tex. Mar. 29, 2021) (Ramirez, J.) (holding that expert's explanations, especially regarding why a rule required certain expenses, showed that the "estimate is not so fundamentally unsupported").

Nationwide posits that Lupfer's estimates are speculative and unreliable. But its argument fails because it takes Lupfer's estimates out of context. For example, Lupfer does speculate that some costs will be incurred to bring the roof up to code.[11] But this speculation stems from the fact that he does not know whether in bringing the roof up to code it will be necessary to replace a particular item that is missing or damaged, making it necessary to include the cost of replacing that item in order to reasonably estimate the cost of repairing

---

[11]*See* ECF No. 22 at 24 ("Q: It's been your experience in the roofing industry that every time you go to replace or repair a roof, you have to bring it fully up to code, to whatever code is applicable at that time? A: Yes."); *id.* (stating that the current roof did not have four inches of ISO board, it might have an inch of fiberglass backer panel, and, whatever was currently there, the city code required the four inches of ISO board).

the roof. *Cf. Moore v. Int'l Paint, L.L.C.*, 547 Fed. Appx. 513, 516 (5th Cir. 2013) (per curiam) (excluding expert testimony when expert failed to "identif[y] some reason for assuming the facts he did for his analysis"); *Williams v. Allstate Ins. Co.*, 2008 WL 5110604, at *3 (E.D. La. Nov. 26, 2008) (holding that expert's methodology was unreliable where he visited property three years after damage and after repairs were done).[12]

Accordingly, considering Lupfer's explanations for his estimates, and his detailed discussion of his costs analysis, the court concludes that his methodology is sufficiently reliable for his cost opinion testimony to be admissible at trial.

## V

Nationwide moves for summary judgment on Kim's breach of contract claim on the grounds of insufficient evidence and concurrent causation.

## A

Nationwide's first argument is that Kim has not provided evidence that there was a covered loss to his roof within the policy period. This argument essentially relies on the court's striking of Lupfer's testimony, which the court has declined to do.[13] But because

---

[12]Furthermore, some of the "speculative" estimates Nationwide points to were retracted by Lupfer. For example, Lupfer mentioned that although he had included a line item for felting, that was an estimate, and he would omit it if he redid the estimate. Regardless, "reliable expert testimony often involves estimation and reasonable inferences from a sometimes incomplete record" and "a few scattered errors in an expert report are not necessarily grounds for exclusion." *Moore*, 547 Fed. Appx. at 516.

[13]The court assumes *arguendo* that Kim will comply with Rule 26 as permitted by this memorandum opinion and order. *See supra* § III(D). If Lupfer's amended report is later stricken, however, Nationwide may be able to move anew for summary judgment on the

- 17 -

Lupfer's testimony is not being excluded, Nationwide cannot demonstrate that it is entitled to summary judgment on this basis.

"An insured cannot recover under an insurance policy unless it pleads and proves facts that show that its damages are covered by the policy." *Tchakarov v. Allstate Indem. Co.*, 2021 WL 4942193, at *5 (N.D. Tex. Oct. 22, 2021) (Fitzwater, J.). The Policy covered hail and wind damage to Kim's roof on April 19, 2020. Lupfer opined in his deposition that the April 19, 2020 hail storm caused the claimed damage to the roof. He also testified that he noted hail strikes on the roof and that the hail damage was consistent with the weather data he analyzed.

Accordingly, because Kim has produced sufficient evidence to create a genuine issue of material fact regarding whether his claim is covered under the Policy, the court denies this ground of Nationwide's motion. *See id.*

### B

The court now turns to the doctrine of concurrent causation.

### 1

Nationwide maintains that Kim has failed to meet his burden to segregate damages to the roof arising from covered hail events from those arising from non-covered hail events because he did not establish that the damages to the roof were caused by the April 19, 2020 event (which was covered) rather than other hailstorms that may have occurred (which would

---

basis that Kim lacks evidence to support his claim that he suffered a covered loss in the policy period.

not be covered).  Nationwide posits that Kim's expert only ruled *in* the possibility of the hail damage coming from the April 19, 2020 event, rather than ruling *out* the possibility that hail damage came from non-covered events.  Nationwide also contends that Kim has failed to segregate wear and tear costs (which are not covered) from the claimed hail damages (which are covered).

Kim responds that Lupfer segregated the damages to the roof.  Kim points out that Lupfer concluded that the April 19, 2020 event caused the damages based on the condition of the hail damage; he ruled out that the damages were caused by a manufacturing process; and he was unable to find another hail storm that occurred that could have caused the disputed damage.

2

Although an insured who suffers damage from both covered and excluded perils is not precluded from recovering, "[w]hen covered and excluded perils combine to cause an injury, the insured must present some evidence affording the jury a reasonable basis on which to allocate the damage."  *Lyons v. Millers Cas. Ins. Co. of Tex.*, 866 S.W.2d 597, 601 (Tex. 1993).  Because an insured can only recover for covered events, the burden of segregating the damage attributable solely to the covered event is a coverage issue for which the insured—here, Kim—carries the burden of proof.  *See Wallis v. United Servs. Auto. Ass'n*, 2 S.W.3d 300, 303 (Tex. App. 1999, pet. denied).  "It is essential that the insured produce evidence which will afford a reasonable basis for estimating the amount of damage or the proportionate part of damage caused by a risk covered by the insurance policy."  *Travelers*

*Indem. Co. v. McKillip*, 469 S.W.2d 160, 163 (Tex. 1971). "[F]ailure to segregate covered and noncovered perils is fatal to recovery." *Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co.*, 130 S.W.3d 181, 198 (Tex. App. 2003, pet. denied); *see also Dall. Nat'l Ins. Co. v. Calitex Corp.*, 458 S.W.3d 210, 227 (Tex. App. 2015, no pet.) (holding there was no reasonable basis for estimating amount of damage caused by risk covered by the insurance policy).

In this case, there was evidence of hail damage to the roof: Lupfer opined that hail caused the damage to the roof. There was also evidence that wear and tear damaged the roof; Kim acknowledged that the roof had experienced normal wear and tear, and Lupfer acknowledged that replacing the roof due to the hail damage would also necessitate other repairs that occurred due to wear and tear.[14] In other words, both the April 19 hail storm and normal wear and tear contributed to the roof damage.

The question presented is whether the concurrent cause doctrine is triggered by a prior cause (wear and tear) and a later cause (the hail storm) that both contribute damage.[15] The

---

[14]Lupfer stated that he only reviewed the damage to the roof from one year *after* the April 19 hail event occurred. Accordingly, his review encompassed one year of additional wear and tear that was absent from the earlier inspections.

[15]Nationwide's other concurrent cause argument—which points to multiple possible hail storms as concurrent causes—fails. Lupfer acknowledged that he could not exclude the possibility that prior hail storms contributed to the roof damage. But he opined that the April 19 storm caused the damage in question to the roof. Accordingly, "[t]his testimony does not require the jury to apportion damage between covered and non-covered storms[.] [I]nstead, it presents a credibility issue as to whether [Lupfer] is correct that all storm damage occurred on the same covered date." *See 2223 Lombardy Warehouse, LLC v. Mount Vernon Fire Ins. Co.*, 2019 WL 1583558, at *7 n.7 (N.D. Tex. Apr. 12, 2019) (Fitzwater, J.).

Fifth Circuit recently certified questions to the Supreme Court of Texas on this issue. *Overstreet v. Allstate Vehicle & Prop. Ins. Co.*, 34 F.4th 496 (5th Cir. 2022), *certified question accepted* (May 27, 2022).  One of the certified questions—directly implicated here—is whether "the concurrent cause doctrine applies where there is any non-covered damage, including 'wear and tear' to an insured property, but such damage does not directly cause the particular loss eventually experienced by plaintiffs." *Id.* at 499.  The Supreme Court of Texas apparently will address the question currently before this court: whether wear and tear present on Kim's roof and the hail storm constitute "concurrent causes," as to which Kim bears the burden of producing evidence to segregate the damage created by each cause.[16]

The court therefore denies Nationwide's motion without prejudice to reconsidering it after the Supreme Court of Texas decides the certified questions.  The parties are directed to file a status report within 14 days after that court's decision is rendered.[17]

---

[16]The Fifth Circuit had certified these questions before, but the case settled.  *See Overstreet*, 34 F.4th at 497.  This court previously noted that these questions did not affect its analysis in *Tchakarov*.  *See Tchakarov*, 2021 WL 4942193, at *6 n.10.  That case involved two hail storms, each of which could have caused the damage on its own.  *Id.*  Here, the question before the court is whether the evidence of preceding wear and tear, which did not directly cause the damage itself, and the later hail storm triggered the concurrent cause doctrine—directly implicating the certified questions.  *See Overstreet*, 34 F.4th at 499 ("[A]n ugly roof can function until it is hit by a hailstorm.  Would the hail damage that rendered it nonfunctional be covered in full?'  Existing precedents do not yield a clear answer." (footnote omitted) (quotation omitted)).

[17]Oral argument is currently scheduled for September 21, 2022.

- 21 -

VI

The court next considers Nationwide's alternative motion for judgment dismissing Kim's breach of contract claim on the pleadings.

A

Nationwide contends that Kim has failed to plausibly plead his claim for breach of contract because he has only made conclusory allegations.

Kim responds that his pleading complies with the Federal Rules of Civil Procedure because the court can draw the reasonable inference that there was a violation of the Policy.

B

"Under Texas law, [Kim's] breach of contract claim requires proof of four elements: (1) the existence of a valid contract, (2) that [Kim] performed h[is] duties under the contract, (3) that the party [he] is suing breached the contract, and (4) that [he] suffered damages as a result of the breach." *Hoffman v. L & M Arts*, 774 F.Supp.2d 826, 832 (N.D. Tex. 2011) (Fitzwater, C.J.).  It is well-settled within this circuit that the plaintiff must plead which provision of the contract the defendant violated. *E.g.*, *Moore v. Town N. Auto., Inc*., 2014 WL 3396100, at *3 (N.D. Tex. July 11, 2014) (Fitzwater, C.J.); *see Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc*., 995 F.Supp.2d 587, 602 (N.D. Tex. 2014) (O'Connor, J.) (collecting cases).  Nevertheless, if the "contents [of the pleading] establish a 'reasonable' or 'properly drawn' inference that the defendant breached" a certain provision (although the provision is not explicitly stated), the court will not dismiss the breach of contract claim. *Sullivan v. Bank of Am., N.A.*, 2014 WL 6977093, at *4 (N.D. Tex.

- 22 -

Dec. 10, 2014) (Fish, J.).

For example, in *Hale v. Assurity Life Ins. Co.*, 2020 WL 5995697 (W.D. Tex. Oct. 9, 2020) the plaintiff pleaded that the insurer had breached its duties by failing to pay the full face value under the policy; that the plaintiff had hired her own expert who identified an error in the insurer's investigation; and that the insurer had paid less than the plaintiff was owed. *Id.* at *6. The court concluded that the plaintiff had not pleaded a breach of contract claim because the plaintiff had "fail[ed] to identify the specific provision in the Policy that" the defendant breached. *Id.*

In *Sullivan* the court reached a different result. In that case there was a fire on a property. *Sullivan*, 2014 WL 6977093, at *4. The plaintiff pleaded that "one of the parties [either the plaintiff or defendant] held a hazard insurance policy on the property at the time of the fire." *Id.* (footnote omitted). The plaintiff also alleged that, under the contract between the plaintiff and the defendant, if one of the parties held such a policy, the party either had to file a claim or help the other party file a claim—neither of which the defendant did. *Id.* Although the plaintiff did not explicitly say which portion of the contract was violated, section five of the contract contained the requirements to file a claim or help the other file a claim. *Id.* Accordingly, the court concluded that the allegations must have stated a claim for violation of section five. *Id*

The court holds that Kim has not plausibly alleged the elements of his breach of contract claim. Kim alleges that a contract existed between the parties; that a severe weather event occurred, which damaged his property and was a covered loss under the contract, but

- 23 -

that Nationwide refused to pay under the terms of the contract; and that he suffered damages.[18]  These general allegations are insufficient to state a claim for breach of contract. *See Hong Kong Aroma Star Int'l LLC v. Elta MD Inc.*, 2019 WL 2357529, at *4 (N.D. Tex. June 4, 2019) (Fish, J.) ("Instead of citing a specific provision allegedly breached by Elta, Aroma Star levied broad and general claims of breach of contract.").  Setting aside Kim's conclusory statement that the severe storm event was "covered," *see Iqbal*, 556 U.S. at 678, Kim's reference to a severe storm event could include any number of storm-related damages, some of which are excluded under the contract and some of which are included.  For example, while the Policy covers wind and hail damage, it does not cover damage from floods.  Accordingly, the court cannot conclude from the allegations contained in Kim's original state-court petition that the contract was even breached: there is no allegation, beyond conclusory statements, that a covered event occurred and damaged the Property.  *See Hoffman*, 774 F.Supp.2d at 837 ("Hoffman alleges no specific act or omission of L & M that failed to comply with its obligations under the Letter Agreement.").

This case is unlike *Sullivan* because the plaintiff in that case alleged conduct that necessarily violated only one part of the contract.  *See Sullivan*, 2014 WL 6977093, at *4. Here, Kim alleges conduct (not paying for damage from a severe storm) that may or may not

---

[18]The court can only consider allegations contained in the pleadings and documents attached to the pleadings.  *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) ("In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto.").  In its amended answer, Nationwide mentions "alleged hail damage," Am. Ans. ¶ 68, but it does not admit that hail damage occurred.  It only admits that a weather event occurred.  *Id.*, ¶ 11.

violate the contract.  This case is more like *Hale*, where the plaintiff alleged only conclusory allegations of breach without pointing to the specific provision that was breached.  *See Hale*, 2020 WL 5995697, at *3.  Accordingly, the court grants Nationwide's alternative motion for judgment on the pleadings and dismisses Kim's breach of contract claim for failure to state a claim.

C

Although the court is granting the Nationwide's motion for judgment on the pleadings, it will permit Kim to replead:

> [i]n view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (alteration in original) (quoting *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).  It is not clear that all of the defects in Kim's breach of contract claim are incurable, and Kim has not advised the court that he is unwilling or unable to amend in a manner that will avoid dismissal.  Accordingly, the court grants Kim 28 days from the date this memorandum opinion and order is filed to file an amended complaint.

VII

The court next considers Kim's extracontractual claims under the DTPA, the Texas Insurance Code, and the common law duty of good faith and faith dealing.

A

Nationwide contends that Kim's extracontractual claims all fail because they all have the same predicate—bad faith—which has not been shown because Nationwide had a reasonable basis to deny coverage. Nationwide maintains that it had a reasonable basis to deny coverage because it relied on *two* inspections, which it reasonably trusted. Alternatively, Nationwide posits that Kim's extracontractual claims fail for other reasons.

Kim responds that the issue of bad faith is a jury question. He contends that there is evidence in the record that Lupfer identified damage for which Nationwide did not pay. According to Kim, the jury will decide whether Nationwide was acting in bad faith "when it failed to identify one hail hit the Plaintiff's roof." P. Resp. (ECF No. 29) at 8.

B

Because Nationwide contends that Kim's extracontractual claims all fail if he has not provided evidence of bad faith, the court will first address Kim's claim under the common law duty of good faith and faith dealing. *See Hall Arts Ctr. Office, LLC*, 327 F.Supp.3d at 998.

1

"Under Texas law, there is a duty on the part of the insurer to deal fairly and in good faith with an insured in the processing of claims." *Higginbotham v. State Farm Mut. Auto.*

- 26 -

*Ins. Co.*, 103 F.3d 456, 459 (5th Cir. 1997) (citing *Arnold v. Nat'l Cnty. Mut. Fire Ins. Co.*,

725 S.W.2d 165, 167 (Tex. 1987)).

> A cause of action for breach of the duty of good faith and fair dealing exists when the insurer has no reasonable basis for denying or delaying payment of a claim or when the insurer fails to determine or delays in determining whether there is any reasonable basis for denial.  In order to sustain such a claim, the insured must establish the absence of a reasonable basis for denying or delaying payment of the claim and that the insurer knew, or should have known, that there was no reasonable basis for denying or delaying payment of the claim.  The insured must prove that there were no facts before the insurer which, if believed, would justify denial of the claim.  However, insurance carriers maintain the right to deny questionable claims without being subject to liability for an erroneous denial of the claim.  A bona fide controversy is sufficient reason for failure of an insurer to make a prompt payment of a loss claim.  As long as the insurer has a reasonable basis to deny or delay payment of a claim, even if that basis is eventually determined by the fact finder to be erroneous, the insurer is not liable for the tort of bad faith.

*Id.* (citations omitted) (emphasis omitted).

The focus of a bad faith inquiry is on the reasonableness of the insurer's conduct in

rejecting or delaying payment of the claim, *see Universe Life Insurance Co. v. Giles*, 950

S.W.2d 48, 49 (Tex. 1997), which is determined by viewing the facts available to the insurer

at the time of denial, *see Viles v. Security National Insurance Co.*, 788 S.W.2d 566, 567

(Tex. 1990).  An insurer breaches its duty of good faith if it denies a claim when its liability

has become reasonably clear.  *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44

(Tex. 1998).  Moreover, an insurer cannot escape liability by failing to investigate a claim

so that it can contend that liability was never reasonably clear; it breaches the duty of good

faith and fair dealing by failing reasonably to investigate a claim.  *See Giles*, 950 S.W.2d at

56 n.5 (citing *Arnold*, 725 S.W.2d at 167).  But an insurer's duty to investigate is limited.

*See State Farm*, 963 S.W.2d at 44.  "The scope of the appropriate investigation will vary with

the claim's nature and value and the complexity of the factual issues involved." *Id.* at 44-45.

If, after reasonable investigation, the insurer has evidence showing that the insured's claim

may be invalid, a bad faith action is not viable.  *See Tucker v. State Farm Fire & Cas. Co.*,

981 F.Supp. 461, 465 (S.D. Tex. 1997) (citing *Aranda v. Ins. Co. of N. Am.*, 748 S.W.2d 210,

213 (Tex. 1988)).

2

Nationwide maintains that it is entitled to summary judgment on Kim's bad faith

claim because a bona dispute exists as to whether the damage to Kim's roof is covered.  The

court agrees.

"[T]he existence of a 'bona fide controversy is a sufficient reason for failure of an

insurer to make a prompt payment of a loss claim.'" *Robinson v. State Farm Fire & Cas.

Co.*, 13 F.3d 160, 162 (5th Cir. 1994) (quotation omitted).  Here, the evidence shows that

Nationwide relied on two expert reports in denying Kim's claim.  Both experts determined

that, while hail did damage Kim's roof, the damage was minimal.  The court concludes that

a reasonable jury could only find that Nationwide's reliance on the two expert reports

provided a reasonable basis for Nationwide to deny payment of Kim's loss claim.  *See Hall

Arts Ctr. Office, LLC*, 327 F.Supp.3d at 998 (holding that reliance on two expert reports

created bona fide controversy); *Mt. Javed Ventures, Ltd. v. Mt. Hawley Ins. Co.*, 2020 WL

- 28 -

2045550, at *7 (E.D. Tex. Apr. 7, 2020) ("The Plaintiff's supporting evidence suggests only a factual dispute over covered damage under the Policy . . . ."); *Mag-Dolphus, Inc. v. Ohio Cas. Ins. Co.*, 906 F.Supp.2d 642, 649 (S.D. Tex. 2012) (holding there was a bona fide dispute where plaintiffs' theory was that defendant had undervalued their loss); *Kondos v. Allstate Tex. Lloyds*, 2005 WL 1004720, at *12 (E.D. Tex. Apr. 25, 2005) ("Allstate's investigation appears to have been adequate and reasonable and its position regarding further payments to be the result of a legitimate controversy on which reasonable minds could differ.").[19]   Accordingly, the court grants Nationwide judgment on Kim's claim for breach of the duty of good faith and fair dealing.

## C

The court turns next to Kim's DTPA claims.   A "bona fide dispute" regarding insurance coverage precludes liability for breach of the duty of good faith and fair dealing and violations of the DTPA and Texas Insurance Code.   *See Higginbotham*, 103 F.3d at 460 (citing *Emmert v. Progressive Cnty. Mut. Ins. Co.*, 882 S.W.2d 32, 36 (Tex. App. 1994, writ denied)); *Douglas v. State Farm Lloyds*, 37 F.Supp.2d 532, 544 (S.D. Tex. 1999).   "Texas

---

[19]Kim's arguments to the contrary are unpersuasive.   The court need not always submit bad faith questions to the jury; it can decide at the summary judgment stage whether Kim has produced sufficient evidence of bad faith to require that the issue be tried.   *See Vought Aircraft Indus., Inc. v. Falvey Cargo Underwriting, Ltd.*, 729 F.Supp.2d 814, 840 (N.D. Tex. 2010) (Fitzwater, C.J.) (dismissing claim for breach of the duty of good faith and fair dealing at summary judgment stage).   Furthermore, to the extent the Kim introduces expert evidence that disputes Nationwide's expert's conclusions, a dispute among experts is not evidence of bad faith.   *Caramba, Inc. v. Nationwide Mut. Fire Ins. Co.*, 2020 WL 7759960, at *5 (S.D. Tex. Dec. 29, 2020) ("A disagreement between experts is not evidence of bad faith, only of a *bona fide* coverage dispute.").

courts have clearly ruled that these extra-contractual tort claims require the same predicate for recovery as bad faith causes of action in Texas." *See Higginbotham*, 103 F.3d at 460; *Nunn v. State Farm Mut. Auto. Ins. Co.*, 729 F.Supp.2d 801, 811 (N.D. Tex. 2010) (Fitzwater, C.J.) (same). "The insurer 'will not be faced with a tort suit for challenging a claim of coverage if there was *any reasonable basis* for denial of that coverage.'" *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 525 (5th Cir. 2015) (citing *Higginbotham*, 103 F.3d at 459) (quotation omitted); *see also Harrison v. Int'l Catastrophe Ins. Managers, LLC*, 2012 WL 1231071, at *8 (E.D. Tex. Mar. 22, 2012) ("When claims under the Texas Insurance Code and the DTPA are joined with a claim for breach of the duty of good faith and fair dealing, and the statutory claims are based on the same theory which underlies the bad faith claim—namely, denial of policy benefits without a reasonable basis—then those DTPA and Insurance Code claims must fail if the bad faith claim fails." (quotation omitted)), *rec. adopted*, 2012 WL 1232020 (E.D. Tex. Apr. 12, 2012).

Kim's DTPA claims arise out of the same factual allegations that give rise to his bad faith claims: namely, that Nationwide improperly denied his claim of loss under the Policy. *Guerrero v. State Farm Lloyds*, 2021 WL 5154784, at *4 (S.D. Tex. June 25, 2021) ("[T]he basis of Plaintiffs' statutory claims is the same as the basis for their breach of good faith and fair dealing claim: Defendant wrongfully denied Plaintiffs' policy benefits."); *JNH Holding, Inc. v. Nationwide Prop. & Cas. Ins. Co.*, 2017 WL 4347683, at *4 (E.D. Tex. Sept. 29, 2017) ("Because the Texas Insurance Code and DTPA claims arise out of the same factual

allegations as the bad faith claims, the Court finds that these statutory claims must also be dismissed."); *see also Douglas*, 37 F. Supp. 2d at 544 (S.D. Tex. 1999) ("[W]hen an insured joins claims under the Texas Insurance Code and the DTPA with a bad faith claim, *all asserting a wrongful denial of policy benefits*, if there is no merit to the bad faith claim, there can be no liability on either of the statutory claims. (emphasis added)).  The court therefore grants Nationwide judgment as to Kim's claims under the DTPA.[20]

D

The court now addresses Kim's Texas Insurance Code claims.  Kim alleges that Nationwide violated Chapter 541 of the Texas Insurance Code by misrepresenting facts related to the policy coverage, in violation of § 541.060(a)(1); by failing to effect a settlement in good faith, in violation of § 541.060(a)(2)(A); by refusing to conduct a reasonable investigation, in violation § 541.060(a)(7); and by "[e]ngaging in false, misleading, and

---

[20]The court does not suggest that dismissal of a plaintiff's bad faith claim will necessarily result in dismissal of one or more extracontractual claims.  *Cf. Norberto v. State Farm Lloyds*, 2020 WL 8300518, at *4 (S.D. Tex. Nov. 25, 2020) ("Because the Court has granted summary judgment against Plaintiffs' bad faith claims, Plaintiffs by extension cannot recover on their extra-contractual claims."); *Tri Invs., Inc. v. United Fire & Cas. Co.*, 553 F.Supp.3d 400, 412 (S.D. Tex. 2020) ("[T]he Court's grant of summary judgment on Plaintiff's bad-faith claim compels a grant of summary judgment on Plaintiff's DTPA and Texas Insurance Code claims as well.").  For example, this court has held that timing requirements under these statutes do not fall away if the bad faith claims do not survive.  *E.g.*, *Hall Arts Ctr. Office, LLC*, 327 F.Supp.3d at 1000.  And some courts hold that extracontractual claims under Tex. Ins. Code Ann. § 542 survive even if bad-faith claims fail.  *See infra* note 21.  The inquiry, at bottom, is whether the plaintiff's allegations supporting the bad faith claim arise out of the same factual allegations as the DTPA and Texas Insurance Code violations.  *See JNH Holding, Inc.*, 2017 WL 4347683, at *4.

deceptive acts or practices under the DTPA," in violation of § 541.151(2).[21] Kim also alleges Nationwide violated Chapter 542 by forcing him to file suit to recover amounts he was due under the Policy, in violation of § 542.003(b)(5).

1

Section 541.060 lists a number of unfair settlement practices, including: "misrepresenting to a claimant a material fact or policy provision relating to coverage at issue," Tex. Ins. Code Ann. § 541.060(a)(1); "failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear," Tex. Ins. Code Ann. § 541.060(a)(2)(A); and "refusing to pay a claim without conducting a reasonable investigation with respect to the claim." Tex. Ins. Code Ann. § 541.060(a)(7). Section 541.151(2) permits a plaintiff to bring a claim for violation of the DTPA if he shows reliance. Finally, § 542.003(b)(5) prohibits "compelling a policyholder to institute a suit to recover an amount due under a policy by offering substantially less than the amount ultimately recovered in a suit brought by the policyholder."

---

[21]The § 541.151(2) claim is not discussed below; it fails because the court has determined that Kim's DTPA claims fail. *See supra* § VII(C). Alternatively, this claim fails because Kim has not produced evidence that he "relied on the act or practice to the person's detriment." *See* § 541.151(2); *Lester v. Unitrin Safeguard Ins. Co.*, 2020 WL 4583839, at *4 (N.D. Tex. Aug. 10, 2020) (McBryde, J.) (dismissing § 541.151(2) claim on motion to dismiss because "plaintiffs have pleaded no facts related to reliance").

2

Because Kim has failed to present evidence that would enable a reasonable jury to find in his favor on his claim for breach of the duty of good faith and fair dealing, his § 541 claims under § 541.060(a)(2)(A) and § 541.060(a)(7) also fail. *See Hall Arts Ctr. Office, LLC*, 327 F.Supp.3d at 1000 ("In this case, for the same reasons that Hall Arts's claim for breach of the duty of good faith and fair dealing fails, its § 541.060(a)(2)(A) and § 541.060(a)(7) claims fail as well."). Accordingly, the court grants Nationwide's motion for summary judgment as to these claims.

3

Kim's claim under Tex. Ins. Code Ann. § 541.060(a)(1) fails for the same reason. This claim presents a somewhat closer question of whether the bona fide dispute rule applies. As discussed, for the bona fide dispute rule to apply, the extracontractual claim must share "the same predicate for recovery as bad faith causes of action in Texas." *Higginbotham*, 103 F.3d at 460. In other words "the statutory claims [must be] 'based on the same theory which underlies the bad faith claim—namely, denial of policy benefits without a reasonable basis[.]'" *Harrison*, 2012 WL 1231071, at *8 (quotation omitted). Kim's claim under § 541.060(a)(1) is purportedly for "misrepresenting to a claimant a material fact or policy provision relating to coverage at issue." Although this claim mentions a misrepresentation—suggesting it may not arise out of the same factual allegations as Kim's bad faith claim—the claim appears to rely on the same theory as his bad faith claim (i.e., that there was no reasonable basis to deny his policy benefits, and Nationwide's representation

to the contrary was a misrepresentation of coverage).  *See Lopez v. Allstate Tex. Lloyds*, 2018 WL 2773381, at *4 (N.D. Tex. May 23, 2018) (Ray, J.) ("Lopez's supporting evidence suggests only a factual dispute over covered damage under the Policy, not that Allstate engaged in false, deceptive, or unfair practices."), *rec. adopted*, 2018 WL 2765409 (N.D. Tex. June 8, 2018) (O'Connor, J.); *see also Mt. Javed Ventures, Ltd.*, 2020 WL 2045550, at *7 ("The Plaintiff's supporting evidence suggests only a factual dispute over covered damage under the Policy, not that Mt. Hawley engaged in false, deceptive, or unfair practices."). Accordingly, the court grants summary judgment dismissing Kim's § 541.060(a)(1) claim against Nationwide.[22]

4

Nationwide contends that Kim' claim under § 542.003 must be dismissed because it does not confer a private cause of action.[23]  The court agrees.  *See Jaramillo v. Liberty Mut.*

---

[22]Alternatively, this claim fails for another reason.  To recover under § 541.060(a)(1), Kim must show that Nationwide misrepresented a fact about the scope of the coverage at issue.  *See 2223 Lombardy Warehouse, LLC*, 2019 WL 1583558, at *5.  Nationwide contends that Kim has not identified any misrepresentation.  The court agrees.  Kim's only challenge to Nationwide's conduct concerns the amount of damage Nationwide determined to have occurred due to the hail storm.  But this dispute does not pertain to the scope of coverage—it concerns the factual basis for Nationwide's denial of his claim. *See Rockbrook Realty Ltd. v. Travelers Lloyds Ins. Co.*, 2016 WL 8674683, at *3 (N.D. Tex. Nov. 18, 2016) (Fitzwater, J.) ("The misrepresentation must be about the details of a policy, not the facts giving rise to a claim for coverage." (quoting *One Way Invs., Inc. v. Century Sur. Co.*, 2014 WL 6991277, at *4 (N.D. Tex. Dec. 11, 2014) (Fitzwater, J.)).

[23]Some courts have held that the bona fide dispute rule does not apply to claims under § 542.003.  *See Aspen Specialty Ins. Co. v. Yin Invs. USA, LP*, 2021 WL 6496716, at *1 (E.D. Tex. Oct. 22, 2021) ("[The bona fide dispute rule] is applicable only to claims under § 541.").

*Ins. Co.*, 2019 WL 8223608, at *5 (N.D. Tex. Apr. 29, 2019) (Means, J.) ("[N]o private right of action exists under Subsection 542.003(b)."); *see also Lester v. Unitrin Safeguard Ins. Co.*, 2020 WL 4583839, at *4 (N.D. Tex. Aug. 10, 2020) (McBryde, J.) ("Federal district courts and Texas appellate courts have routinely held that [§ 542.003] does not provide a private right of action against such an insurer.") (collecting cases); *Great Am. Assur. Co. v. Wills*, 2012 WL 3962037, at *2 (W.D. Tex. Sept. 10, 2012). Accordingly, the court grants Nationwide summary judgment on this claim.

*   *   *

Accordingly, for the reasons explained, the court grants in part and denies in part Nationwide's motion to strike Kim's expert's testimony; grants Nationwide's alternative motion for judgment on the pleadings as to Kim's breach of contract claim; denies without prejudice Nationwide's summary judgment motion as to Kim's breach of contract claim; and grants Nationwide's summary judgment motion as to all of Kim's extracontractual claims.[24]

The court grants Kim leave to file an amended complaint within 28 days of the date this memorandum opinion and order is filed.

Within 60 days of the date this memorandum opinion and order is filed, Kim must serve an amended report of Lupfer that fully complies with all requirements of Rule 26(a)(2)(B).

---

[24]None of Kim's claims survives Nationwide's motions, but the court has granted Kim leave to amend. It therefore does not reach Nationwide's motion for summary judgment with respect to Kim's claim for attorney's fees.

**SO ORDERED**.

July 11, 2022.

SIDNEY A. FITZWATER
SENIOR JUDGE